RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0084p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

ROBERT GIRTS,

            *Petitioner-Appellant,*

     *v.*

CHRIS YANAI,

             *Respondent-Appellee.*

No. 08-4592

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-00264—Kathleen McDonald O'Malley, District Judge.

Argued: December 2, 2009

Decided and Filed: March 29, 2010

Before: BATCHELDER, Chief Judge; MARTIN and CLAY, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Matthew D. Ridings, THOMPSON HINE LLP, Cleveland, Ohio, for Appellant. Stephen P. Carney, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Matthew D. Ridings, Robert F. Ware, THOMPSON HINE LLP, Cleveland, Ohio, for Appellant. Stephen P. Carney, Benjamin C. Mizer, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

     CLAY, J., delivered the opinion of the court, in which MARTIN, J., joined. BATCHELDER, C.J. (pp. 18-22), delivered a separate opinion concurring in the judgment only.

─────────────────

**OPINION**

─────────────────

     CLAY, Circuit Judge. Petitioner Roberts Girts appeals the district court's decision not to bar a pending third trial following the state's failure to retry Petitioner within the time provided by this Court's conditional grant of a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254.  Petitioner has twice been convicted of the 1992 murder of his wife.  Both convictions were subsequently overturned based on prosecutorial misconduct.  The first conviction was overturned by the state court on direct appeal.  The second conviction was overturned by this Court in *Girts v. Yanai*, 501 F.3d 743 (6th Cir. 2007).  In that decision, Petitioner was granted a conditional writ of habeas corpus calling for the release of Petitioner from custody if he was not tried within 180 days.  Girts was not tried within 180 days but was released and has subsequently been rearrested for the same murder.  He argues on appeal that a third trial should be barred.  For the following reasons, the district court's decision not to bar retrial is **AFFIRMED**.

## STATEMENT OF FACTS

Robert Girts' wife, Diane, died on September 2, 1992.  Girts was indicted for aggravated murder on February 9, 1993.  At his first trial, Girts testified on his own behalf. During the cross-examination of Girts, the prosecutor asked a series of questions about Girts' alleged confession to a jailhouse informant.  Girts denied the confession, and no witness was ever provided to support the prosecutor's contentions.  Girts was convicted of the murder. On July 28, 1994, the conviction was reversed by the Ohio Court of Appeals on account of the blatant prosecutorial misconduct.

Girts was subsequently retried and chose not to testify.  During closing arguments at that trial, the prosecution made several statements in closing argument regarding Girts' decision not to testify or to speak with police.  Girts was again convicted.  This Court granted Girts' habeas petition based on the prosecutorial misconduct in the second trial.  We found that:

> Given the facts in this case, there is a strong likelihood that the prosecutor strategically made the prejudicial statements at the end of the trial to focus the jury's attention on Petitioner's silence, and away from the limited evidence presented at trial. The improper statements in this case constitute flagrant prosecutorial misconduct and are grounds for reversal even if trial counsel did not raise an objection.

*Girts*, 501 F.3d at 761.[1] We conditionally granted the habeas petition, remanding to the district court with instructions to order Girts' release unless the State of Ohio granted him a new trial within 180 days. Ohio sought rehearing and rehearing *en banc*. This Court denied those requests on February 19, 2008. Respondent did not seek a stay of the mandate under Federal Rule of Appellate Procedure 41, and the Court issued its mandate on March 12, 2008. The district court entered an order conditionally granting the writ on April 14, 2008. The order stated: "Petitioner's application for a writ of habeas corpus is **CONDITIONALLY GRANTED** as follows. Unless the State of Ohio grants Petitioner a new trial within 180 days from the date of this Order, Petitioner is to be released from custody at that time." That order created a deadline of October 11, 2008 for the State to act. Respondent filed a petition for *certiorari* on May 19, 2007, and the Supreme Court denied the petition on October 6, 2008.

Two days later, on October 8, 2008, Respondent moved for a 30-day extension of time to comply with the conditional writ. The district court initially granted the motion. Girts filed a motion for reconsideration and immediate release on October 10, 2008. On October 14, 2008, while that motion for reconsideration was pending, the state hurriedly convened a pretrial hearing, presumably in anticipation of a retrial, but despite the fact that the state was still holding Girts under the authority of the not-yet-vacated prior conviction for the same crime. Girts was appointed counsel, who was provided only five minutes to meet with Petitioner and who objected to the hastily convened proceedings. No bail was set at the hearing.

On November 3, 2008, the district court granted the motion for reconsideration and entered an unconditional writ of habeas corpus, calling for Petitioner's release no later than November 6, 2008. A formal written memorandum and order was issued on November 5, 2008. Respondent filed a "Notice of Compliance" on November 5, 2008, stating that it had released Girts from state prison into the custody of the county sheriff's department. Respondent requested a finding on whether it could retry Girts, and on

---

[1]The facts of the case are accurately summarized in our previous opinion, *Girts*, 501 F.3d at 749-52, where we indicated that the district court properly noted "that the evidence against Petitioner was not overwhelming." *Id*. at 760.

November 6, 2008, the district court clarified its order, stating that, while it was an "extremely close question," Respondent could retry the prisoner. The district court also stated, however, that Girts could not be returned to the state's physical custody until Respondent obtained a valid conviction. On that same day, Girts was placed on supervised release, and Respondent has not appealed the district court's order releasing Girts pending a retrial.

## DISCUSSION

### I.      Jurisdiction

We review a district court's disposition of a habeas petition *de novo*. *Eddleman v. McKee*, 586 F.3d 409, 412 (6th Cir. 2009).

Defendant argues that our recent decision in *Eddleman* forecloses federal jurisdiction because Girts is no longer in custody. In *Eddleman*, the Court reversed the district court's decision barring retrial where Michigan had failed to retry a petitioner who had secured a conditional grant of the writ of habeas corpus during the prescribed period. The prisoner in that case had already had the defective conviction set aside by the state when the district judge considered the motion to bar retrial. "For federal habeas jurisdiction to exist under § 2254, therefore, a state prisoner must be held pursuant to a *judgment* – rather than, say, an indictment or criminal information . . . [T]he limitation . . . means that, once the unconstitutional judgment is gone, so too is federal jurisdiction under § 2254." *Id*. at 413.

*Eddleman* is not directly on point for the situation before the Court. In *Eddleman*, this Court affirmed a district court's grant of a conditional writ for the petitioner to be retried within a "reasonable time." Our mandate issued on January 5, 2007. The district court's order required the state to retry the petitioner within 45 days of the issuance of the mandate. The following month, the petitioner was rearrested. He appeared for a hearing in state court on February 28, 2007 and agreed that his sentence, based on the improper conviction, had been "vacated." He filed a motion on March 1, 2007 requesting an order barring a subsequent trial. The order was denied. The state

court was slow to retry Eddleman, and he renewed his motion in federal court for an unconditional writ barring reprosecution on November 19, 2007. The district court agreed and ordered the release of petitioner on January 22, 2008. On February 5, 2008, the order was clarified to bar Michigan from reprosecuting the petitioner. Therefore, the district judge's order barring retrial was issued almost a year after Eddleman was rearrested on the new charges and more than eleven months after Eddleman himself agreed that the improperly obtained conviction had been "vacated."

In this case, the district court's initial order granting Petitioner's release was issued while he was still in custody on the improperly obtained conviction. He was "released" in response to the district court's order, given orally on November 3, 2007 and confirmed in writing on November 5, 2007. At that point, the district court could have entered an order barring retrial. *See, e.g.*, *Capps v. Sullivan*, 13 F.3d 350, 351-52 (10th Cir. 1993) (affirming a district court's decision to bar retrial in granting a writ following the state's failure to retry petitioner during the period of the conditional writ). Respondent reads *Eddleman* so broadly that it would prevent any appellate review of a district court's order barring or declining to bar a subsequent prosecution. Defendant argues that "once the Warden released [Petitioner], habeas jurisdiction ended." (Defendant Br. at 15). Since the district court had the authority to release the prisoner, Respondent's theory means it could not have appealed an order granting release and barring retrial if the district court had been inclined to bar retrial.

This extremely broad reading of *Eddleman* cannot be reconciled with our previous decision considering when a federal court could bar reprosecution in *Satterlee v. Wolfenbarger*, 453 F.3d 362 (6th Cir. 2006). In that case, the district court had granted an unconditional release, and the petitioner was not in custody during the appeal. This Court found that the district court left "ambiguous" whether the petitioner's immediate release and the expungement of his record of conviction barred retrial. "It is not clear whether the unconditional writ granted by the district court is unconditional (1) in the sense that it is effective immediately but reprosecution is permitted or (2) in the sense that it bars reprosecution." *Id*. at 370.

In this case, similar confusion took place at the district court level. The district court orally granted the unconditional writ at court proceedings held on November 3, 2008. Respondent then asked for clarification on whether the unconditional writ barred retrial. While the district court considered this request for clarification, Girts was released from state prison and transferred to the county jail on November 5, 2008. The district court's decision allowing retrial was issued less than three hours after Respondent provided notice that Girts had been transferred to county jail. In *Satterlee*, this Court raised the issue eighth months after his unconditional release, and the district court barred retrial almost nineteen months after its initial order granting release. The crucial distinction between *Satterlee* and *Eddleman* was that in *Satterlee*, the Court reviewed an initial grant of an unconditional writ, while in *Eddleman*, the district court was attempting to micro-manage subsequent state court proceedings. *See also*, *Gardner v. Pitchess*, 731 F.2d 637 (9th Cir. 1984) (reversing district court's barring of a subsequent trial after petitioner had been granted an unconditional writ); *Foster v. Lockhart*, 9 F.3d 722, 727 (8th Cir. 1993) (considering but rejecting argument that subsequent trial should be barred for petitioner who had already been released on bail, although the Court read the writ as conditional).

To reconcile *Satterlee* and *Eddleman*, the holding of *Eddleman* must be seen as merely a sensible reaffirmation of the principle announced in *Fisher v. Rose*, 757 F.2d 789, 791 (6th Cir. 1985), that federal courts do not have continuing oversight of subsequent state court proceedings following the state's compliance with a grant of a conditional writ of habeas corpus. The initial determination about whether a subsequent trial should be barred is a necessary part of the grant of a writ. It is only proper that an appellate court would have jurisdiction to review that determination by the district court regardless of whether the district court found in favor of the petitioner or the respondent. The fact that the Court, in binding precedent, did just that in *Satterlee* requires us to reach such a conclusion.

*Eddleman* did not consider the implications of *Satterlee* in reaching its decision, relying instead on *Fisher*. *Fisher* likely compelled the decision reached in *Eddleman*,

but again, the factual situation was different than that presented here or in *Satterlee*. Like *Eddleman*, the petitioner in *Fisher* at the time of the district court's order "was no longer in custody pursuant to the constitutionally defective judgment of conviction, but was being held pursuant to the indictment." *Fisher*, 757 F.2d at 791. This result, reached again in *Eddleman*, can only be reconciled with *Satterlee* by holding that a district court, in granting the unconditional writ, can bar retrial at that time. In this case, the order being appealed was the district court's decision on what was meant by the term "unconditional writ," exactly the same issue remanded by this Court in *Satterlee* nearly a year after the petitioner had been freed from his improper conviction.

The concurrence focuses on the fact that the district court's official order declining to bar retrial was issued after Girts was technically released. The November 5, 2008 order, however, was explicitly a "clarification" based on *Respondent's* oral request that the district court state whether its grant of an "unconditional writ" meant that the state was barred from reprosecuting Girts. The concurrence appears to believe that the November 5th order was made without jurisdiction but that it would have been proper for Girts' to appeal the November 3, 2008 order. If that had occurred, per *Satterlee*, we could have remanded for clarification as to whether the district court meant to bar reprosecution. Then, sometime at the end of 2010, two years after it initially clarified its order, the district court could again decline to bar reprosecution. Girts could then appeal to this Court, and we could affirm. We prefer to allow the district court to explain contemporaneously what it meant by an "unconditional writ."**[2]** We do not hold that a district court can materially amend its judgment after the state has released a petitioner, and we acknowledge binding Supreme Court authority that a habeas court does not maintain "continuing supervision over a retrial conducted pursuant to a conditional writ granted by the habeas court." *Pitchess v. Davis*, 421 U.S. 482, 490

---

**[2]**The concurrence never engages with the factual predicate of *Satterlee*. We explicitly stated in *Satterlee*: "It is not clear whether the unconditional writ granted by the district court is unconditional (1) in the sense that it is effective immediately but reprosecution is permitted or (2) in the sense that it bars reprosecution." 453 F.3d at 370. The November 3, 2008 order also "is not clear" whether retrial was barred, and it certainly aids our review to have the district court clarify what it meant before engaging in a time-consuming remand, even if that clarification occurred after Girts was released. Had the district court not clarified its order, we could remand per *Satterlee*, and the district court could now decide to bar retrial, more than a year after Girts was released from custody.

(1975). In the unique factual setting of this case, we simply read the November 5, 2008 order as clarifying the November 3, 2008 order, in which the district court granted an unconditional writ and in which the district court was free to decide whether to bar retrial. We therefore reaffirm what has always been the case – a district court sitting in habeas has jurisdiction to consider the circumstances that exist up until either the state complies with a conditional writ or the court issues an unconditional writ, but does not have jurisdiction to consider circumstances that unfold after the state complies with the writ.

For these reasons, we hold that jurisdiction is proper.

## II.        "Extraordinary Circumstances"

Since we have jurisdiction to consider whether the district court's unconditional grant of habeas corpus should have barred retrial, we now must consider whether Girts may be tried a third time, following two trials whose verdicts were reversed due to blatant prosecutorial misconduct. Girts' primary argument is that since Respondent failed to try him during the period allowed by the conditional writ of habeas corpus, it should now be prevented from trying him a third time. "In a typical case in which a prisoner is released because a state fails to retry the prisoner by the deadline set in a conditional writ, 'the state is not precluded from rearresting petitioner and retrying him under the same indictment.'" *Satterlee*, 453 F.3d at 370 (quoting *Fisher*, 757 F.2d at 791). In *Satterlee*, the Court noted that "in 'extraordinary circumstances,' such as when 'the state inexcusably, repeatedly, or otherwise abusively fails to act within the prescribed time period or if the state's delay is likely to prejudice the petitioner's ability to mount a defense at trial,' a habeas court may 'forbid reprosecution.'" *Satterlee*, 453 F.3d at 370 (quoting 2 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure § 33.3 (5th ed. 2005)).[3]

---

[3]The concurrence would refuse to follow binding precedent simply because it disagrees with it. *Satterlee* remains "controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting *en banc* overrules the prior decision." *Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001).

We review the district court's decision to grant or deny a writ of habeas corpus *de novo*; however, the district court's factual findings will not be disturbed unless they are clearly erroneous. *Dunlap v. United States*, 250 F.3d 1001, 1004 (6th Cir. 2001). Respondent argues that the question of "extraordinary circumstances" should be reviewed for clear error because it is a factual determination. We disagree and believe that while the district court's factual findings must be reviewed for clear error, the legal conclusion concerning whether those facts rise to the level of "extraordinary circumstances" should be reviewed *de novo*. *See United States v. Jeross*, 521 F.3d 562, 581-82 (6th Cir. 2008) (applying *de novo* review to a determination of "extraordinary circumstances" in the context of the sentencing guidelines).

For support of his claim of "extraordinary circumstances," Petitioner relies primarily on a district court opinion from the Southern District of New York. *Morales v. Portuondo*, 165 F. Supp. 2d 601 (S.D.N.Y. 2001). The decision in *Morales*, however, came at a crucially different point in the litigation and presented much more in the way of "extraordinary circumstances." The court noted three situations where federal courts have barred retrial of successful habeas petitioners: (1) where the act of retrial itself would violate the petitioner's constitutional rights, for example, by subjecting him to double jeopardy; (2) where a conditional writ has issued and the petitioner has not been retried within the time period specified by the court; and (3) where the petitioner had served extended and potentially unjustifiable periods of incarceration before the writ was granted. *Id*. at 609. Girts presents the second possibility, but in *Morales*, the district court dealt with the third situation. In that procedural posture, the district court found a variety of reasons why barring retrial was appropriate.

> First, on the record before the Court, no reasonable jury could convict [the petitioners] of murder; indeed, the evidence strongly suggests that they are innocent. Second, [the petitioners] have been severely prejudiced by the passage of time; they have "served extended and potentially unjustified periods of incarceration" and their ability to defend against the charges in any new trial has been hampered, at least in some respects. In addition, certain aspects of the District Attorney's Office's handling of this matter are troubling; this is yet another consideration weighing against permitting a re-trial.

*Id.*

On the merits, Girts presents a very different case. The evidence does not "strongly suggest" that Girts is innocent. It is true that "the evidence against Petitioner was not overwhelming," leading the prosecutor at the second trial to strategically make "prejudicial statements at the end of the trial to focus the jury's attention on Petitioner's silence, and away from the limited evidence presented at trial." *Girts v. Yanai*, 501 F.3d at 760. Still, while Respondent may not have a particularly strong case against Girts, the defendants in *Morales* presented compelling evidence that they were in fact not guilty. Not only was the evidence at the petitioners' original trial "extremely thin," but subsequently, another man had confessed to the murder and absolved the petitioners. The district court found that "it is clear" that the confessing party "was *not* lying. He came forward precisely because he felt guilty that [the petitioners] had been convicted of a crime that he, not they, had committed." *Morales*, 165 F. Supp. 2d. at 610-11. Furthermore, another party had confessed to the murders, although the evidence was previously excluded at trial, and another eyewitness to the murder specifically stated that neither petitioner was at the scene of the crime. The district court concluded that if the petitioners were retried, "it is hard to imagine that any reasonable jury could convict." *Id.* at 611. *Morales* simply presented a much more compelling case for the petitioners' innocence than is presented by Girts.

The difference in procedural posture also makes an apple-to-apple comparison problematic. The decision in *Morales* was made at the stage of granting the initial writ. That court declined to grant a conditional writ to provide the state a second opportunity to try the petitioners. The court relied on the evidence of the petitioners' innocence, prejudice resulting from the passage of time, and the district attorney's office's unwillingness to consider evidence contrary to its position. For the most part, Girts relies on similar evidence. He cites the fact that Respondent has twice committed prosecutorial misconduct, the fact Girts has served fifteen years in prison without ever having been properly convicted, and notes the impact of the passage of time as

prejudicial should a third trial commence.[4]  All of this information was known when this Court decided to grant a conditional writ.  To find for Girts, this Court must find that while the multiple instances of prosecutorial misconduct and fifteen years in jail are not sufficient to bar retrial, the added fact that Respondent did not retry Girts during the time mandated by the conditional writ sufficiently creates the "extraordinary circumstances" that a court must find to bar retrial.[5]

In *Satterlee*, this Court found that reprosecution could be barred if "the state inexcusably, repeatedly, or otherwise abusively fails to act within the prescribed time period."  In the instant case, Respondent undoubtedly did almost nothing to retry Girts during the 180-day period.  The district court found that all the state did to comply was to arrange a pretrial conference on October 14th, 2008 (after the conditional writ expired): "Trial Counsel was appointed for Mr. Girts only very shortly prior to this conference, was able to spend less than 5 minutes conferring with Mr. Girts before the conference, and had no particular knowledge of Mr. Girts' case when the conference occurred." (Memorandum and Order 3-4).

Petitioner finds it inexcusable that Respondent took no steps to retry Girts during the 180-day period of the conditional writ and finds that the failure to retry him "is part of a larger pattern of ongoing constitutional violations that Mr. Girts has been forced to endure and has resulted in his imprisonment for the past fifteen years." (Pet. Br. at 22).  The problem with this argument is that the failure to retry Petitioner within 180 days was not a violation of the conditional writ.  The conditional writ clearly provides that

---

[4]We note that Petitioner has requested a stay in the state court proceedings pending the resolution of his habeas claim, undercutting some of his arguments about the scope of any injury arising by the additional delay following our grant of the conditional writ.

[5]Respondent argues that in considering "extraordinary circumstances," we can look only at the conduct of the state after the conditional writ was granted.  We disagree and believe that the entire universe of facts surrounding a petitioner's claim is at least relevant.  This panel's previous decision to allow retrial underscores our belief that a long prison term or even two instances of prosecutorial misconduct do not automatically lead to barring retrial.

Respondent could either retry him or release him, and Petitioner was released once the district court determined that Respondent was out of time.**6**

For obvious reasons, the course of conduct by Respondent is troubling. It has suffered no practical consequence from its failure to prosecute Girts within 180 days. Nonetheless, we do not believe that barring retrial would be appropriate at this time. First, the parties have cited, and we have independently found, no case where retrial was barred in a similar situation. Instead, even after the state fails to retry the petitioner during the period of time provided in the conditional writ, the state routinely maintains the opportunity to retry the petitioner following his release.

In *Harvest v. Castro*, 531 F.3d 737 (9th Cir. 2008), the Ninth Circuit confronted an attempt by the state to modify the conditional grant of habeas relief. The state neither released the petitioner nor started proceedings within the 60 days provided by the district court. The state blamed a clerical error for the delay, and upon learning that the clerical error was made, it waited three days to notify the district court, allowing the county district attorney time to file a new complaint charging the petitioner with murder. The state proceeded to file an "Application to Amend Order Nunc Pro Tunc" seeking to modify the conditional writ. The Ninth Circuit determined that modification was possible but only if the standards of Rule 60 of the Federal Rules of Civil Procedure were met. The Ninth Circuit found that the state could not satisfy those requirements and ordered an unconditional writ releasing the petitioner from custody. Despite this broad failure to comply with the conditional writ, the Ninth Circuit specifically noted: "Our granting of an unconditional writ of habeas corpus does not, itself, preclude the State from rearresting and retrying [the petitioner]." *Id*. at 750 n.9. It specifically cited language from the Hertz & Liebman habeas treatise relied on in *Satterlee* that "Federal courts usually permit rearrest and retrial after the time period specified in the conditional release order has elapsed and the prisoner has been released." *Id*. (quoting Hertz and Liebman *supra*, § 33.3, at 1686).

---

**6**It is crucial to our analysis that the state requested and was granted an extension. Therefore, the state was technically always compliant with court orders. Absent the extension, the continued incarceration of Petitioner on the improper conviction may have presented "extraordinary circumstances."

In this case, we reach the same result. When ordered to release Girts, the state complied. Nothing in our previous order forbade the state from retrying Girts. The failure to begin trial proceedings against Girts throughout the 180-day period is not something of which we approve, but the state technically complied with all court orders. We believe the district court acted properly by mandating that Girts remain free on bond throughout the third trial proceedings, but that the failure to proceed during the 180-day conditional grant, even coupled with the multiple instances of prosecutorial misconduct, do not rise to the level of "extraordinary circumstances" contemplated in *Satterlee*.[7]

## III.    Alleged Constitutional Injuries

Finally, Petitioner claims that a third trial would violate the Double Jeopardy Clause, his right to a speedy trial, and pose a general due process violation.[8] We acknowledge that, generally, a petitioner "must first exhaust the remedies available in state court by fairly presenting his federal claims to the state courts." *Smith v. State of Ohio Dep't of Rehab. and Corrections*, 463 F.3d 426, 430 (6th Cir. 2006). We address these issues, however, to insure that our order allowing a subsequent trial does not independently violate Girts' constitutional rights in the fluid factual scenario unfolding in the state court proceeding. We focus only on activities that occurred before the date on which Girts was released from his previous conviction, November 5, 2008. *See Douglas v. Workman*, 560 F.3d 1156, 1176 (10th Cir. 2009) (holding that barring a new trial may be necessary "when the error forming the basis for the relief cannot be corrected in further proceedings" and acknowledging that the "classic example of such

---

[7]We emphasize, however, that federal courts retain the power to bar a subsequent trial under appropriate circumstances, and while that power should not be used except in extraordinary circumstances, it should still be invoked "as law and justice require." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

[8]Respondent argues that Petitioner failed to make these arguments in the district court. We will entertain them nonetheless. In *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996), this Court held that it "has discretion to entertain novel questions." In determining whether to exercise this discretion we consider: 1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; 2) whether the proper resolution of the new issue is clear and beyond doubt; 3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and 4) the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court. *Id*. In this case, the issue is purely one of law and easily decided. Furthermore, if a third trial violates Girts' constitutional rights, it is certainly more efficient to consider the issue now rather than on appeal following a subsequent trial.

an irredeemable error . . . is . . . when a new trial would violate the Double Jeopardy Clause of the Fifth Amendment") (citations and quotations omitted).

Consistent with this approach, Girts' first challenge is that a third trial would violate the Double Jeopardy Clause. Even Girts concedes that his case "is not a typical situation in which double jeopardy applies." (Pet. Reply Br. at 25). Girts argues that the Double Jeopardy Clause should protect him from "the anxiety, expense, and delay occasioned by multiple prosecutions" *Lee v. United States*, 432 U.S. 23, 32 (1977), and that he should enjoy "the right . . . to have his trial completed before the first jury impaneled to try him." *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982). His strongest argument is that the prosecution intentionally committed prosecutorial misconduct in order to get a new trial. The Supreme Court has held that "where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial [a defendant may] raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Id*. at 676. However, the Court specifically held that "conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion . . . does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Id*. at 675-76.

The general rule, however, is that a successful post-conviction appeal is considered differently than a mistrial. "[R]eprosecution for the same offense is permitted where the defendant wins a reversal on appeal of a conviction . . . [T]he crucial difference between reprosecution after appeal by the defendant and reprosecution after a sua sponte judicial mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal." *United States v. Jorn*, 400 U.S. 470, 484 (1971).

We do not foreclose the possibility that egregious prosecutorial misconduct could in an extreme case implicate double jeopardy rights, but this case does not present such a scenario. Girts relies on this panel's previous statement that the prosecutorial misconduct indicated a "strong likelihood that the prosecutor strategically made the

prejudicial statements." *Girts*, 501 F.3d at 761. This statement, while accurately describing the prosecution's likely motives, does not rise to the necessary level for a finding by this Court sitting in habeas that Girts' constitutional rights were violated. Based on our consideration of the record, we do not believe that the prosecution's "strategy" was to get a mistrial declared, but was instead to improperly infect the jury in the prosecution's favor. Girts' attorney did not actually object, and was thus found ineffective, and while Girts claims a mistrial would have been granted if one had been requested, this is pure speculation. The trial court could have offered a limiting instruction rather than declare a mistrial.

Girts further argues that a third trial reaches the "breaking point" and thus should be barred where double jeopardy concerns are implicated. Again, Petitioner cites no authority that this "breaking point" analysis applies to the habeas context and instead relies solely on direct appeals. *See, e.g.*, *Carsey v. United States*, 392 F.2d 810 (D.C. Cir. 1967). We have already implicitly rejected this argument by issuing a conditional writ, and we decline to depart from that previous determination.

In addition, Girts asserts that a third trial should be barred based on the speedy trial provision of the Sixth Amendment and the Due Process Clause of the Fifth Amendment. Initially, it is unclear whether this Court can properly consider this argument on appeal. In effect, Girts is challenging the legitimacy of the pending state litigation, a claim that should be brought under 28 U.S.C. § 2241. Furthermore, Girts arguably needs a certificate of appealability in order to address this issue, which he does not have.

Even if we were to overlook these procedural hurdles, the claims fail on the merits. Petitioner cites no support for his contention that the fifteen-year delay caused by the improperly obtained conviction implicates his speedy trial rights in the habeas context. He bases his argument primarily on the factors for a speedy trial analysis discussed in *Barker v. Wingo*, 407 U.S. 514 (1972). Under *Barker*, a court should consider four factors in analyzing whether a defendant's right to a speedy trial was violated: length of delay, the reason for the delay, the defendant's assertion of his right,

and prejudice to the defendant. *Id*. at 530. "Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). This threshold is typically assumed if the delay is longer than one year. *Id*. at 652 n.1.

In general, a *Barker* analysis can be done only after the trial, inasmuch as before trial, "the *Barker* prejudice criterion is indeterminate at this point." *Atkins v. Michigan*, 644 F.2d 543, 547 (6th Cir. 1981). Furthermore, Girts' argument under *Barker* would arguably apply to almost every successful federal habeas petitioner when the writ is granted based on prosecutorial misconduct. All have suffered a substantial delay; all are prejudiced because the delay is more than one year; and almost all prosecutorial misconduct might be characterized as "deliberate." No court of which we are aware has considered the *Barker* factors in the setting of a post-habeas trial, and Petitioner does not offer a sufficiently compelling case for this Court to do so. This is particularly true because all of these factors were known when we granted the conditional writ, which specifically allowed for retrial.

Finally, Petitioner makes a cursory argument in favor of a due process claim, but nothing about this argument implicates the state's failure to retry him within the 180 day window. For support, Girts relies on a footnote in a Fourth Circuit case that found an "aggregate delay" could entitle a defendant to relief. *United States v. Hall*, 551 F.3d 257, 271 n.18 (4th Cir. 2009). He cites no case law from the habeas context where a subsequent retrial was barred based on a due process violation. Furthermore, this Court's previous decision to grant a conditional writ forecloses his claim that any third trial in his situation poses a due process violation. The conduct of Respondent subsequent to the granting of the conditional writ and before the granting of the unconditional writ does not reach the level of a due process violation.

All told, Girts presents a compelling case on a factual level. While we express no opinion as to his guilt or innocence, it is appalling that Girts has spent fifteen years in prison on the basis of two constitutionally deficient convictions. It is also unfortunate

that the state of Ohio did not act with all deliberate speed to retry him, instead allowing the conditional writ's 180-day period to run.  Still, the law is clear that a habeas court may bar retrial only in "extraordinary circumstances," and at this point, we cannot conclude that the district court erred in finding that the delay following Girts' successful habeas petition, even combined with the previous history of the improper convictions, rises to the level of "extraordinary circumstances."

## CONCLUSION

For the foregoing reasons, the district court's decision to grant an unconditional writ but decline to bar retrial is **AFFIRMED**.

---

**CONCURRING IN THE JUDGMENT ONLY**

---

ALICE M. BATCHELDER, Chief Judge, concurring in judgment only. I concur in the judgment because I agree that it would be improper for the district court to bar the State of Ohio from retrying Robert Girts. But I disagree with the majority's reasoning in certain key respects.[1]

I do not agree that the district court had jurisdiction to decide Girts's fate after the State had released him from custody pursuant to the writ and, beyond that, I am not convinced that a federal habeas court ever has the power to bar on untimeliness grounds a State from retrying a successful habeas petitioner, though I am aware that this court has held otherwise. As for the former, we explained in *Eddleman v. McKee*, 586 F.3d 409, 413 (6th Cir. 2009), that after the habeas court has vacated a conviction and the State has released the petitioner, "at that point, per the plain terms of § 2254, the district court's jurisdiction over [the petitioner]'s case [comes] to an end." Stated another way, "once the unconstitutional judgment is gone, so too is federal jurisdiction under § 2254." *Id.*; *cf. Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006) ("[W]hen a state meets the terms of the habeas court's condition, thereby avoiding the writ's actual issuance, the habeas court does not retain any further jurisdiction over the matter."); *Fisher v. Rose*, 757 F.2d 789, 791 (6th Cir. 1985) ("Since Fisher was no longer being held pursuant to the constitutionally defective conviction, we conclude that the district court erred in ordering Fisher's release and barring retrial.").

The majority rejects this plain reading of *Eddleman* in favor of a view that a federal district court, acting under § 2254 habeas jurisdiction, can indeed go back and amend or clarify its prior judgment even after the State has released the petitioner, and

---

[1] I also disagree with the majority's characterization of the evidence against Girts as lacking and the prosecutor's motives as nefarious. As I stated in my dissent from the prior opinion, in which the majority granted the writ, the evidence against Girts was overwhelming and the prosecutor's statements were neither flagrant nor prejudicial. *Girts v. Yanai*, 501 F.3d 743, 761-62 (6th Cir. 2007) (Batchelder, J., dissenting). But, though I did not then and do not now agree with the majority on these underlying facts, this disagreement is ultimately irrelevant to the present appeal.

supports this proposition with citation to and discussion of *Satterlee v. Wolfenbarger*, 453 F.3d 362 (6th Cir. 2006). To the extent that *Satterlee* actually stands for this proposition — and I do not agree that it does — it lies in direct conflict with *Pitchess v. Davis*, 421 U.S. 482, 490 (1975) ("Neither Rule 60(b), 28 U.S.C. § 2254, nor the two read together, permit a federal habeas court to maintain a continuing supervision over a retrial conducted pursuant to a conditional writ granted by the habeas court."), and is therefore null *ab initio*. But the district court in *Satterlee* did not render a decision after the State had released Satterlee; the district court granted an unconditional writ, the State then released Satterlee, and the State appealed the district court's grant of the writ. *See Satterlee*, 453 F.3d at 362. That the appeal continued after the petitioner's release is as irrelevant here as it was there, and as it was in *Eddleman*. No one contends that we lack jurisdiction to review the decision on appeal. *See Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) ("[O]nce the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of [the appeal].").

The district court granted Girts a conditional writ on April 14, 2008, and then granted him an unconditional writ on November 3, 2008. The State released Girts on November 5, 2008, so the district court had issued both of those orders while Girts was still in custody.[2] Moreover, both writs offered the same remedy: release from custody. Neither writ stated or even suggested that the State could not retry Girts, which is to be expected as it is generally understood that "the state is not precluded from re-arresting [a] petitioner and re-trying him under the same indictment." *Satterlee*, 453 F.3d at 370; *Fisher*, 757 F.2d at 791 ("[H]olding a conviction invalid and granting the writ do not generally bar retrial on the original charge."). If Girts was unhappy with the remedy he should have appealed the April 14 order granting the conditional writ, *see Gentry*, 456 F.3d at 692 (noting that "[c]onditional grants of writs of habeas corpus are final orders"), or the November 3 order granting the unconditional writ, which would have followed the approach taken in *Satterlee*. But Girts did not appeal either of those orders. Girts

---

[2]It was only after the State had released Girts from custody — on November 5, 2008 — that the district court issued the order under consideration in this appeal (also on November 5, 2008).

appealed the November 5 order purporting to clarify the November 3 order; an order the district court issued after its jurisdiction had expired.

The simple conclusion is that the district court did not have jurisdiction to enter the November 5 order. In finding that the district court did have jurisdiction, the majority miscasts both *Eddleman* and *Satterlee*. I believe that *Eddleman*, 586 F.3d at 413, stands for the proposition that a district court's habeas jurisdiction expires after it has granted the writ and vacated the conviction, and the State has released the petitioner, whereas *Satterlee*, 453 F.3d at 370, stands for the unremarkable proposition that a party can appeal the grant of an unconditional writ. Therefore, I disagree with the majority's conclusion that the district court had jurisdiction to issue the November 5 order and I reject its bases for reaching that conclusion.

As for the proposition that a federal habeas court has the power to use untimeliness as a ground for barring a State from retrying a successful habeas petitioner, *Satterlee* certainly advances *that* proposition, stating: "[I]n extraordinary circumstances, such as when the state inexcusably, repeatedly, or otherwise abusively fails to act within the prescribed time period or if the state's delay is likely to prejudice the petitioner's ability to mount a defense at trial, a habeas court may forbid reprosecution." *Satterlee*, 453 F.3d at 370 (quotation marks omitted) (quoting 2 HERTZ & LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 33.3 at 1685-86 (5th ed. 2005)). Other circuits have accepted this proposition as well, though ours is the only one to do so since the enactment of AEDPA. *See*, *e.g.*, *Capps v. Sullivan*, 13 F.3d 350, 352 (10th Cir. 1993) ("In this circuit, barring a new trial is a permissible form of judgment."); *Foster v. Lockhart*, 9 F.3d 722, 727 (8th Cir. 1993) (holding that "[a] district court has authority to preclude a state from retrying a successful habeas petitioner"); *Heiser v. Ryan*, 951 F.2d 559, 564 (3d Cir. 1991).

But this view, which grants the district courts ultimate authority over state courts and state prosecutors, appears inconsistent with the, admittedly sparse, statements the Supreme Court has offered on this issue historically. In 1890, the Court was plain and direct: "[I]t is neither our inclination nor our duty to decide what the [state] court may

or what it may not do in regard to [retrial]." *In re Medley*, 134 U.S. 160, 173 (1890). More recently, in 1963, the Court elaborated on its view of the habeas power: "Habeas lies to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him. Indeed, it has no other power; it cannot revise the state court judgment; it can act only on the body of the petitioner." *Fay v. Noia*, 372 U.S. 391, 430-31 (1963) (dicta), overruled in part on other grounds by *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977), and *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). While the Court has generally expanded the reach of habeas over time (though Congress expressly restricted its reach with the enactment of AEDPA), it has yet to refute the above-quoted expressions of its opinion and it has never spoken directly on the question of whether a federal district court can use untimeliness or delay as a ground to bar a state from retrying a successful habeas petitioner.

Finally, the majority addresses Girts's claims that a third trial would violate the double jeopardy clause, his right to a speedy trial, and due process, despite the State's insistence that Girts has never before raised these claims. The majority chose to "entertain" these questions on the basis that it has "discretion to entertain novel questions" and cites *Friendly Farms v. Reliance Insurance Co.*, 79 F.3d 541, 545 (6th Cir. 1996). Ordinarily, however, we do not have discretion to entertain novel questions on habeas review. Ordinarily, "[t]he petitioner must first exhaust the remedies available in state court by fairly presenting his federal claims to the state courts; unexhausted claims will not be reviewed by a federal court." *Wilson v. Mitchell*, 498 F.3d 491, 498 (6th Cir. 2007).

Indeed, we suggested just such a problem in *Eddleman*, explaining: "In its order unconditionally granting the writ, however, the district court proceeded effectively to adjudicate a speedy-trial claim that had never been presented to, much less ruled upon by, the Michigan state courts. With due respect, the district court acted out of turn in doing so." *Eddleman*, 586 F.3d at 413; *see also Flenoy v. Russell*, 902 F.2d 33 (table), 1990 WL 61114, *3 (6th Cir. May 8, 1990) ("Even if we construe [the] petitioner's argument as a claim that his Sixth and Fourteenth Amendment rights were violated by

the delay before his retrial, we still must reject it, without prejudice, because he has not yet exhausted his state remedies."). By ruling on these habeas claims that have never been presented to the state court, the majority has also acted out of turn.

Therefore, while I agree with the majority that it would be improper for the district court to bar the State of Ohio from retrying Robert Girts, I cannot join its reasoning. I do not agree that the district court had jurisdiction to render a judgment binding on the State after Girts had been released pursuant to the writ. Moreover, I tend to think that the authority granted to the district courts allowing them to bar the states from retrying successful habeas petitioners is inconsistent with the Supreme Court's view of the habeas power. And, finally, I cannot join the majority's consideration of Girts's new habeas claims that have not been presented to or exhausted in the state court.