[Cite as *State v. Gillispie*, 2016-Ohio-7688.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO.   26965 |
| | : | |
| v. | : | T.C. NO. 90CR2667 |
| | : | |
| ROGER DEAN GILLISPIE | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the ____10th___ day of _____November_____, 2016.

. . . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellant

MARK GODSEY, Atty. Reg. No. 0074484, Ohio Innocence Project, University of Cincinnati College of Law, P. O. Box 210040, Cincinnati, Ohio 45221

and

JIM PETRO, Atty. Reg. No. 0022096, 343 Peach Avenue, Lakeside Marblehead, Ohio 43440

and

PIERRE H. BERGERON, Atty. Reg. No. 0071402 and COLTER L. PAULSON, Atty. Reg. No. 0081903 and LARISA M. VAYSMAN, Atty. Reg. No. 0090290, 221 E. Fourth Street, Suite 2900, Cincinnati, Ohio 45202

        Attorneys for Defendant-Appellee

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} The State of Ohio appeals from the trial court's grant of Roger Dean Gillispie's "Motion to Compel Discovery and, If Required Discovery is Not Produced, to Dismiss Indictment," in which the trial court dismissed the State's indictment against Gillispie. For the following reasons, the trial court's judgment will be affirmed.

### I. Factual and Procedural History

{¶ 2} The procedural history of this case in both state and federal court is long and complicated, but integral to an understanding of our opinion.

{¶ 3} In July 1991, Gillispie was convicted by a jury of nine counts of rape, three counts of kidnapping, three counts of gross sexual imposition, and one count of aggravated robbery based on two separate incidents of sexual assault that occurred in August 1988. Except for the three counts of gross sexual imposition, each count carried a firearm specification. In accordance with the sentencing statutes at the time, the trial court imposed an indeterminate sentence of 22 years to 56 years in prison. Gillispie's conviction and sentence were affirmed on direct appeal. *State v. Gillispie*, 2d Dist. Montgomery Nos. 12941 & 13585, 1993 WL 10927 (Jan. 21, 1993).

{¶ 4} The specific facts underlying Gillispie's convictions have been detailed in several prior appeals. *E.g., id.*; *State v. Gillispie*, 2d Dist. Montgomery Nos. 22877 & 22912, 2009-Ohio-3640. We have summarized those facts, as follows:

> * * * On August 5, 1988, defendant forced his way into the passenger
>
> side of [S.C.'s] car as she was leaving a drug store. At gunpoint, he forced
>
> her to drive behind a vacant building in the shopping center where he

exposed himself, fondled her, and forced her to perform oral sex.

On August 20, 1988, in another shopping center, defendant forced his way into the rear seat of a car occupied by [C.W.] and [B.W.] as they were about to leave the center. He pretended to be a security officer and, at gunpoint, forced the twins to drive to a secluded area where he exposed himself, fondled them and forced each of them to perform oral sex.

*State v. Gillispie*, 2d Dist. Montgomery No. 14595, 1995 WL 41334, *1 (Feb. 1, 1995) (affirming the dismissal of Gillispie's petition for post-conviction relief).

{¶ 5} At trial, Gillispie claimed that he had an alibi for the times of the rapes. He asserted that he was with friends on August 5, 1988, and that he was camping with friends in Kentucky during the weekend of August 20, 1988.

{¶ 6} Gillispie filed numerous motions in the years following his conviction. Of relevance to this appeal, on February 13, 2008, Gillispie filed a second petition for post-conviction relief or, in the alternative, a motion for a new trial. He argued that new evidence, falling into three broad categories, had come to light: (1) evidence of police corruption, perjury, witness tampering and other official misconduct of various types by Detective Scott Moore of the Miami Township Police Department; (2) additional evidence that an alternative suspect, Kevin Cobb, committed the offenses; and (3) new scientific understanding in the field of eyewitness identification.

{¶ 7} With regard to his allegation of police misconduct, Gillispie argued, in part, that the State had failed to provide exculpatory evidence known to the police, violating his right to due process as set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Gillispie further argued that, to the extent that such exculpatory

evidence was not preserved by the State, such failure to preserve evidence violated his due process rights under *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). The alleged *Brady* material consisted of receipts from a campground in Kentucky and supplemental police reports that indicated that Gillispie had once been eliminated as a suspect by the original police investigators, Detectives Steven Fritz and Gary Bailey.

{¶ 8} Upon review of the trial court's denial of Gillispie's petition and motion, we concluded that the trial court did not err in finding no *Brady* violations. *Gillispie*, 2d Dist. Montgomery Nos. 22877 & 22912, 2009-Ohio-3640, at ¶ 47-106. We also concluded that the alleged new scientific evidence regarding eyewitness identification did not warrant a new trial. *Id.* at ¶ 139-151. However, we concluded that additional evidence regarding Cobb constituted "new evidence" sufficient to require a hearing on whether a new trial was warranted. *Id.* at ¶ 138.

{¶ 9} In December 2009, prior to a hearing in the trial court on Gillispie's motion for a new trial, Gillispie filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Ohio based on the alleged *Brady* violations.[1] After this date, proceedings occurred in both state and federal court.

{¶ 10} In July 2010, the state trial court held a hearing on Gillispie's motion for a new trial based on Cobb as an alternative suspect. In December 2010, the trial court

---

[1] The case in federal district court proceeded before a magistrate judge. Pursuant to 28 U.S.C. 636(c), the magistrate judge had plenary jurisdiction over the case upon the parties' unanimous consent and referral from the district court. Consequently, the magistrate judge had the authority to enter judgment in the case (as opposed to issuing a report and recommendation to the district court), and any appeals from the magistrate judge's judgments were made directly to the Sixth Circuit. *See id.*

denied the motion.   Gillispie appealed.

{¶ 11} On December 15, 2011, relying exclusively on the state court record,[2] the district court granted Gillispie a conditional writ of habeas corpus, finding that a *Brady* violation had occurred.   The district court wrote:

> * * * In late 1989 or early 1990, during the initial investigation, detectives Fritz and Bailey considered Mr. Gillispie as a suspect after Rick Wolfe brought to the detectives a picture of Mr. Gillispie whom Mr. Wolfe had just terminated as an employee at General Motors (GM).   The investigating detectives noted that the "Wanted" poster for the case had been posted for almost two years at GM, but that Mr. Wolfe did not bring Mr. Gillispie to the detectives' attention until after he (Mr. Wolfe) had a fight with Mr. Gillispie and terminated his employment.   Nevertheless, the original investigating detectives eliminated Mr. Gillispie as a suspect because he did not fit the physical description of the rapist which the victims had given nor did he fit the profile of the rapist.   Eventually, Detective Fritz informed Mr. Wolfe that he and Det. Bailey did not consider Mr. Gillispie a good suspect and that there were not going to be charges brought against him.   At some point after Dets. Fritz and Bailey had eliminated Mr. Gillispie as a suspect, Mr. Wolfe again approached the detectives about the rape

---

[2] On March 10, 2011, the district court held an evidentiary hearing on Gillispie's *Brady* claim.   However, in its decision, the magistrate judge stated that *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), which the United States Supreme Court decided after that evidentiary hearing, precluded the district court from considering the evidence that the parties introduced at the hearing in deciding the habeas corpus question in Gillispie's case.   *Gillispie v. Timmerman-Cooper*, 835 F.Supp.2d 482, 494 (S.D. Ohio 2011).

case and brought several photographs to them. Because the investigators had already eliminated Mr. Gillispie as a suspect, Det. Fritz just put the photos into the case file. *Det. Bailey prepared supplemental reports describing the events involving Mr. Wolfe, their investigation of Mr. Gillispie, their elimination of Mr. Gillispie as a suspect, and their reasons therefor.*

When Det. Moore, who had recently been promoted to detective, took over the investigations in June 1990 almost two years after the crimes were committed, he contacted the victims and presented a photo spread to them. The photo of Mr. Gillispie was closer and larger than the other photos in the spread and, unlike the other photos, had a matte finish. The victims identified Mr. Gillispie.

There was, of course, absolutely no physical evidence that connected Mr. Gillispie to the crimes. However, the parties agree that at the trial, the three victims each testified that Mr. Gillispie was the person who committed the crimes. Nevertheless, at some point in deliberations the jury was deadlocked eight to four in favor of acquittal. *See Gillespie* [sic], 1993 WL 10927 at *3. It was not until the trial court delivered an *Allen* charge to the jury that it convicted Mr. Gillispie. That fact sheds light on the relative weakness of the case the State presented to the jury.

The jury never heard testimony about the original investigating officers, Dets. Fritz and Bailey, eliminating Mr. Gillispie as a suspect nor the reasons why they eliminated him. While Dets. Fritz's and Bailey's opinions as to why Mr. Gillispie was not a good suspect certainly do not directly go

to the issue of Mr. Gillispie's guilt or innocence, they clearly go to the quality of the investigation which took place subsequent to Dets. Fritz's and Bailey's investigation. The withheld information is material which would have allowed Mr. Gillispie's counsel to impeach Det. Moore with respect to his investigation of the crimes for which Mr. Gillispie was tried and convicted. *Cf., D'Ambrosio v. Bagley*, No. 1:00-CV-2521, 2006 WL 1169926 (N.D.Ohio Mar. 24, 2006), *aff'd*, 527 F.3d 489 (6th Cir.2008). In view of the State's case, that information "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *VanHook [v. Bobby,* 661 F.3d 264 (6th Cir.2011).]

"Materiality" for purposes of *Brady* analysis is a mixed question of law and fact. *United States v. Phillip*, 948 F.2d 241 (6th Cir.1991). The state courts' determination that the evidence in question is not material is both an unreasonable determination of the facts in light of the evidence presented to those courts and an objectively unreasonable application of *Brady* and its progeny.

This Court concludes that Mr. Gillispie's Ground for Relief 1 is meritorious. Specifically, the Court finds that Mr. Gillispie was denied his right to due process pursuant to the Fourteenth Amendment as interpreted in *Brady*, to be apprised of all material exculpatory and impeachment information which the State holds.

Accordingly, the Petition for Writ of Habeas Corpus is granted. The State of Ohio is ordered to release Petitioner from custody unless he is

again convicted at a trial commencing not later than July 1, 2012.

(Emphasis added.)   *Gillispie v. Timmerman-Cooper*, 835 F.Supp.2d 482, 508-509 (S.D. Ohio 2011).

{¶ 12} The next day, the State filed a notice of appeal to the Sixth Circuit.   The State also filed a motion to stay in the district court.   The district court granted the stay, but concurrently (on Gillispie's motion) ordered Gillispie's release on bond.   *Gillispie v. Timmerman-Cooper*, S.D.Ohio No. 3:09-cv-471 (Dec. 22, 2011).

{¶ 13} On April 13, 2012, while the State's federal appeal was pending, we reversed the trial court's ruling on Gillispie's motion for a new trial based on an alternative suspect.   *State v. Gillispie*, 2d Dist. Montgomery No. 24456, 2012-Ohio-1656, *amended on reconsideration by State v. Gillispie*, 2d Dist. Montgomery No. 24456, 2012-Ohio-2942 (deleting paragraph 45 from original opinion).   We vacated Gillispie's conviction and sentence and remanded the matter to the trial court for a new trial.   The State appealed our ruling to the Ohio Supreme Court.   The Ohio Supreme Court denied leave to appeal on November 7, 2012.   *State v. Gillispie*, 133 Ohio St.3d 1467, 2012-Ohio-5149, 977 N.E.2d 694 (table).

{¶ 14} After the Supreme Court of Ohio's ruling, the State moved to dismiss its federal appeal of the district court's December 15, 2011 decision granting a conditional writ of habeas corpus.   Notably, the State's motion did not ask the Sixth Circuit to vacate the district court's decision.   The State's appeal was dismissed on November 27, 2012.

{¶ 15} The State sought vacation of the conditional writ by means of a Fed.R.Civ.P. 60(b) motion filed in the district court.   On December 20, 2012, the district court denied the motion, reasoning that the conditional writ was neither moot nor void and that it (the

district court) had jurisdiction to enforce its conditional writ. The court rejected the State's argument that the district court's judgment should be vacated because the judgment was not reviewed by an Article III judge; the court emphasized that the State had consented to plenary magistrate judge jurisdiction and had voluntarily dismissed its appeal to the Sixth Circuit. Finally, the district court reasoned that there was no change in the decisional law that warranted vacation of the judgment. The court stated:

> * * * The Second District Court of Appeals granted Gillispie a new trial on a legal basis different from this Court's legal basis. The factual circumstances have somewhat changed—the State is now bound to retry Gillispie both by this Court's conditional writ and the mandate of the Second District Court of Appeals. Those orders do not conflict.

> However, this Court's Decision and Order does conflict with the prior decision of the Second District Court of Appeals on the precise issue on which this Court ruled. *State v. Gillispie*, 2009-Ohio-3640, 2009 Ohio App. LEXIS 3107, 2009 WL 2197052 (Ohio App. 2nd Dist.2009). If the Decision and Order were vacated, presumably the Second District's prior decision would be the law of the case for the retrial. This Court found that prior decision was "both an unreasonable determination of the facts in light of the evidence presented to those courts and an objectively unreasonable application of *Brady* and its progeny." *Gillispie*, 835 F.Supp. [2d] at 509.

> The Second District Court of Appeals has itself recognized that a decision of this Court in a habeas corpus case can have collateral estoppel effect in a later proceeding in the Ohio courts, even if this Court's decision

is in error as a matter of Ohio law.   *State v. Slagle*, 2012-Ohio-1575, 2012 Ohio App. LEXIS 1384, 2012 WL 1144051 (Ohio App. 2nd Dist. Apr. 6, 2012).   There is no good reason offered by Respondent why Gillispie should be deprived of that benefit of his judgment in this Court which was obtained with much effort.

*Gillispie v. Timmerman-Cooper*, S.D.Ohio No. 3:09-cv-471, 2012 WL 6644624, *6 (Dec. 20, 2012).   The State filed a notice of appeal to the Sixth Circuit on January 17, 2013.

{¶ 16} On January 18, 2013, Gillispie filed a motion in the Montgomery County Common Pleas Court to compel discovery of the supplemental police reports or to dismiss the indictment.   In its response, the State indicated that it "does not now possess, nor has it ever possessed, any such reports.   Copies will not be forthcoming."   However, the State argued that collateral estoppel did not bar it from challenging the preclusive effect of the district court's December 15, 2011 decision, and that Gillispie was not entitled to dismissal of the indictment, even if the State were bound by the district court's decision. Upon motion of the State, and with Gillispie's consent, the state trial court stayed the matter until the Sixth Circuit ruled on the State's appeal from the denial of its Fed.R.Civ.P. 60(b) motion in federal court.

{¶ 17} The State also asked the district court to stay its Fed.R.Civ.P. 60(b) ruling pending appeal to the Sixth Circuit; the State's request was denied.   In ruling on the State's motion to stay, the district court considered the same factors that are used in determining whether to grant a preliminary injunction, including whether the State was likely to prevail on the merits.   Upon considering this factor, the district court recognized that its December 15, 2011 decision, which the district court had declined to vacate, had

both prospective and retrospective components. With respect to the prospective portion, the district court concluded that it had jurisdiction to make the writ unconditional if the State failed to comply with the conditions in its December 15, 2011 judgment.

{¶ 18} In ruling on the motion to stay as to the retrospective portion of its December 15, 2011 judgment, the district court rejected a suggestion by the State that the State could retry Gillispie without producing the supplemental police reports. The district court stated that the December 15, 2011 ruling would be entitled to collateral estoppel effect, including during retrial. The court wrote:

> It seems clear from the State's papers on the instant Motion that it does not concede that collateral estoppel effect. It argues "[t]his Court did not, as Gillispie now argues, make any finding that the purported *Brady* violation was incurable such that the State of Ohio could not retry him unless they produced the alleged reports in question." (Reply, Doc. No. 105, PageID 4783.) On the contrary, that is precisely the implication of the retrospective portion of this Court's judgment: the evidence in question is *Brady* material and Gillispie may not be constitutionally convicted of the crimes of which he stands charged without production of that material. Any new judgment of conviction procured after a trial in which Gillispie was not provided with the *Brady* material would be as unconstitutional as the old judgment and Gillispie would be entitled to file a new petition for writ based on the retrospective portion of the judgment entirely apart from this Court's authority vel non to make its prior writ unconditional.

*Gillispie v. Timmerman-Cooper*, S.D. Ohio No. 3:09-cv-471, 2013 WL 526481, *4 (Feb.

11, 2013). The district court concluded that, "even if the Sixth Circuit completely agrees with the State on the prospective aspect of the judgment, it seems very unlikely it would hold that this Court [the district court] abused its discretion in refusing to vacate the retrospective portion of the judgment." *Id.* at *5.

{¶ 19} The State did not appeal any part of the denial of its motion for stay pending appeal.

{¶ 20} In November 2014, the Sixth Circuit affirmed the district court's denial of the State's Fed.R.Civ.P. 60(b) motion, albeit on other grounds. It agreed with the district court that the decision granting the conditional writ was not void, but it found that "the district court's assertion of a prospective interest in the conditional writ's enforcement [was] flatly inconsistent with our decision in *Eddleman [v. McKee*, 586 F.3d 409 (6th Cir.2009)]." *Gillispie v. Warden, London Correctional Inst.*, 771 F.3d 323, 328 (6th Cir.2014). The Sixth Circuit further noted that the district court was without jurisdiction to "decide the preclusive effect of its order for purposes of ongoing proceedings in the Ohio courts." *Id.* at 330. However, addressing the equities of the situation, the Sixth Circuit found no basis to vacate the district court's decision. The circuit court commented that, although the conditional writ had become moot, the State had "slept on its rights" when it failed to seek vacation of the decision in its first appeal, and the appellate court saw "no particular reason why a vacatur of [the district court's] order would serve the public interest here."

{¶ 21} After the Sixth Circuit's ruling, the common pleas court sought additional briefing on the preclusive effect of the conditional writ.

{¶ 22} On November 30, 2015, the trial court granted Gillispie's motion to dismiss

the indictment. The court accepted, "as it must," the federal district court's findings of fact in the conditional writ, and held that the doctrine of res judicata prevented the court from "relitigating [the district court's] conclusions of fact and law delineated in [its] December 15, 2011 Conditional Writ – the Supplemental Reports not only existed, they were material pursuant to *Brady*. And thus Gillispie cannot be retried because, as the State **admits**, the State does not have the Supplemental Reports and cannot produce them." (Emphasis in original.) The trial court reasoned:

> Simply stated, Judge Merz's Conditional Writ is "a final judgment or decree rendered on the merits by a court of competent jurisdiction [and] is a **complete bar** to any subsequent action on the same claim between the **same parties <u>or</u> those in privity with them**." Of course the State of Ohio here and the Warden as Respondent before Judge Merz are in clear privity, having the exact same goal: defeating Gillispie's *Brady* claim. And Judge Merz' Conditional Writ was clearly a final judgment from a court of competent jurisdiction.

> As stated above, Ohio courts have held consistently that issue preclusion applies with respect to federal habeas decisions and subsequent state court retrial proceedings, thereby prohibiting the relitigation of issues already decided in the federal *habeas* litigation. And so it must be here.

> And as noted by the Second District in *Slagle*, this Court could not relitigate Judge Merz' conclusions that the Supplemental Reports existed and were material per *Brady* even were this Court to believe Judge Merz' decision was reached in error. Were the law otherwise, federal *habeas*

relief and the doctrine of collateral estoppel would be eviscerated and the Supremacy Clause turned on its head.

> This Court acknowledges that the State's tactical decision to eschew filing with the State court affidavits contradicting those of Dets. Bailey and Fritz in order to establish that the Supplemental Reports never existed is odd.   But the State made precisely that tactical decision and pursued only its formalistic, legal argument that Gillispie's affidavits did not establish a *Brady* violation as a matter of law.   Judge Merz now has ruled otherwise – a ruling binding upon this Court.

(Emphasis in original.)

**{¶ 23}** The State appeals from the trial court's judgment.

## II. Issues on Appeal

**{¶ 24}** The State's sole assignment of error states that the trial court abused its discretion in dismissing the indictment, and it offers several arguments to support its position.

**{¶ 25}** First, it states that the federal district court lost jurisdiction over the retrial once the state court vacated Gillispie's conviction in 2012.  The State argues that the conditional writ issued in December 2011 became "superfluous and of no force or effect."

**{¶ 26}** Second, the State asserts that the district court addressed an issue that was not addressed by the state courts, namely whether the supplemental police reports actually existed, and thus collateral estoppel does not apply to the district court's factual findings.  As a corollary argument, the State asserts that *State v. Slagle*, 2d Dist. Montgomery No. 23934, 2012-Ohio-1575, is inapposite, because the retrial in *Slagle*

occurred pursuant to the writ of habeas corpus, not a state court mandate.

{¶ 27} Third, the State claims that, even if the supplemental reports exist (a fact that the State disputes), the appropriate remedy was "a new trial at which Appellee possessed the *information* he asserts was withheld in 1991," not dismissal of the indictment. (Emphasis added.) The State argues that Gillispie has that information already.

{¶ 28} Gillispie responds that the district court's judgment granting the conditional writ is a valid judgment, which the trial court was bound to follow, pursuant to the Supremacy Clause. Alternatively, he asserts that, even if the Supremacy Clause did not apply, res judicata would prevent the State from challenging the federal district court's decision that Gillispie could not be retried without the State's turning over the supplemental reports. Gillispie emphasizes that the district court had jurisdiction to issue its original judgment granting the conditional writ and subsequent orders, that the parties fully litigated the *Brady* issue in federal court and the State chose not to challenge the existence of the supplemental reports, and that a hearing was not required for res judicata to apply.

### III. Preclusive Effective of District Court Decision Granting Conditional Writ

{¶ 29} The ultimate issue in this case is whether the trial court erred in dismissing the indictment against Gillispie due to the State's not providing the supplemental police reports, i.e., *Brady* material, to Gillispie. However, because the trial court's reasons for granting the motion to dismiss were based substantially on the district court's December 15, 2011 decision granting a conditional writ to Gillispie, we necessarily focus (as did the parties) on the district court decision and whether it had any preclusive effect in state

court. The Sixth Circuit expressly declined to state an opinion on this matter and noted that the district court did not have jurisdiction to decide the preclusive effect in state court. *Gillispie*, 771 F.3d at 330.

{¶ 30} "[U]nder our federal system, the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause." *Tafflin v. Levitt*, 493 U.S. 455, 458, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990). Consequently, state and federal courts generally have concurrent jurisdiction to adjudicate claims arising under federal law, including claims raised pursuant to the United States Constitution in criminal cases. In reaching their determination of federal law issues, state courts generally are not bound by decisions of federal courts with respect to federal law, except for decisions of the United States Supreme Court. *See Reed v. Farley*, 512 U.S. 339, 358, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) (Scalia, J., concurring in part and in judgment) (The United States Supreme Court "and not individual federal district judges, has appellate jurisdiction, as to federal questions, over the supreme courts of the States.").

{¶ 31} The power of the federal courts on habeas corpus is not a grant of appellate review of state court decisions by federal district courts, but rather provides a mechanism for incarcerated offenders to challenge their incarcerations as violative of federal law. As stated by the United States Supreme Court:

> The whole history of the writ -- its unique development -- refutes a construction of the federal courts' habeas corpus powers that would assimilate their task to that of courts of appellate review. The function on habeas is different. It is to test by way of an original civil proceeding,

independent of the normal channels of review of criminal judgments, the very gravest allegations.  State prisoners are entitled to relief on federal habeas corpus only upon proving that their detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution.

*Townsend v. Sain*, 372 U.S. 293, 311-312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), *overruled on other grounds*.

{¶ 32} State prisoners may collaterally attack either the imposition or execution of their sentences under 28 U.S.C. 2254.   A state offender generally is required to exhaust a constitutional claim in state court before he or she can raise that same issue in a petition for a writ of habeas corpus in federal court.   28 U.S.C. 2254(b)(1)(A).

{¶ 33} Pursuant to 28 U.S.C. 2254(a), a district court "shall entertain an application for a writ of habeas corpus in [sic] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   The federal court may grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings" if the state court's adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.   "If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody * * * violates the Constitution, that independent judgment should prevail."   *Williams v.*

*Taylor*, 529 U.S. 362, 389, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

{¶ 34} Gillispie raised one ground for relief in his petition for a writ of habeas corpus: "The State's failure to disclose to the defense, prior to or during trial, supplemental *reports* written by the original investigating detectives, which eliminated Petitioner as a suspect, violated Petitioner's due process rights pursuant to *Brady v. Maryland*. U.S. Const. amend V, XIV." (Emphasis added.) Gillispie's argument to the district court was that "there were *reports* that existed but which the State did not disclose and which completely contradicted Det. Moore's and the State's theory of the case." (Emphasis added.) *Gillispie*, 835 F.Supp.2d at 503-504.

{¶ 35} The State argued in response that (1) Gillispie's petition was barred by the Antiterrorism and Effective Death Penalty Act (AEDPA) statute of limitations, (2) "there is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information or where the evidence is available from another source because in such case, there is really nothing for the government to disclose," (3) the reports were not material, and (4) even if the reports were material, "the State did not need to disclose the supplemental reports because Mr. Gillispie had access to the *information* via alternative sources, to wit: Det. Fritz." (Emphasis added.) *Id*. at 504-505.

{¶ 36} The district court's December 15, 2011 decision concluded that "[t]he state courts' determination that the evidence in question [the supplemental police reports] is not material is both an unreasonable determination of the facts in light of the evidence presented to those courts and an objectively unreasonable application of *Brady* and its progeny." *Id*. at 509. As a remedy, the court ordered Gillispie to be released unless he

were again convicted at a trial commencing not later than July 1, 2012. The district court did not expressly state that the State was required to produce the supplemental police reports prior to any retrial, but that requirement was arguably implicit in the district court's ruling.

{¶ 37} The Sixth Circuit determined that the district court lost jurisdiction over the habeas case once this court vacated Gillispie's conviction and sentence in 2012. *Gillispie,* 771 F.3d at 330. It expressly stated that the district court could not "continue to enforce the terms of a conditional writ after the petitioner is no longer in custody pursuant to an unconstitutional judgment." *Id.* at 329.

{¶ 38} The State asserts that the district court's lack of authority to enforce, supervise, oversee, or interfere with any retrial in state court also means that the district court's underlying analysis for granting the writ also has no effect. In fact, it argues that this case should again be governed by our July 2009 determination that no *Brady* violation had occurred. We disagree.

{¶ 39} The fact that the district court can no longer enforce its remedy does not render the entire December 15, 2011 decision a nullity. As recognized by the Sixth Circuit, the district court had subject matter jurisdiction to grant the conditional writ at the time it was issued, and because both the district court and the Sixth Circuit denied the State's effort to vacate the district court decision pursuant to Fed.R.Civ.P. 60(b), the district court's decision remains a valid judgment. Accordingly, the district court's determination that the State's failure to provide the supplemental police reports to the defense violated Gillispie's due process rights pursuant to *Brady* remains in effect.

{¶ 40} In addition to the inherent relationship between state and federal courts in

habeas proceedings, the doctrine of collateral estoppel can be invoked to preclude relitigation, in state court, of issues addressed by a federal district court in a habeas proceeding.[3]  *See State v. Slagle*, 2d Dist. Montgomery No. 23934, 2012-Ohio-1575. "The doctrine of collateral estoppel, or, more correctly, issue preclusion, precludes further action on an identical issue that has been actually litigated and determined by a valid and final judgment as part of a prior action among the same parties or those in privity with those parties."  *State v. Williams*, 76 Ohio St.3d 290, 294, 667 N.E.2d 932 (1996).

{¶ 41} The district court addressed Gillispie's *Brady* claim following this court's denial of his *Brady* claim in state post-conviction proceedings.  The district court had jurisdiction to enter its December 15, 2011 decision granting habeas relief, and there is no question that there is mutuality and privity of the parties, despite the nominal difference in party names.  *See Slagle* at ¶ 42.

{¶ 42} Because the district court's habeas ruling was not vacated, we cannot simply ignore the district court's conclusion that the State's failure to produce the supplemental police reports violated Gillisipie's due process rights pursuant to *Brady*.

{¶ 43} The State also asserts that *Slagle* does not require the application of collateral estoppel in this case.  In *Slagle*, an attorney was charged with theft of a large sum of money from a law firm.  He waived his right to a jury trial and elected to be tried before a particular judge.  The case proceeded to a bench trial before that judge, but the judge died before rendering a verdict.  Upon motion by the State, another judge declared

---

[3] We often speak in terms of "res judicata," rather than "collateral estoppel" and "estoppel by judgment," as the doctrine of res judicata encompasses both collateral estoppel (issue preclusion) and estoppel by judgment (claim preclusion).  *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995).

a mistrial. The attorney then sought dismissal of the indictment on double-jeopardy grounds, claiming that a verdict could have been rendered by another judge based on the audiovisual record of the trial and written arguments of the parties, and thus there was no manifest necessity for a mistrial. The trial court denied the motion.

{¶ 44} Slagle then filed a habeas corpus action in federal court. The district court granted Slagle a conditional writ, ordering that "Slagle shall be discharged from further responding to the Indictment unless the Common Pleas Court renders a decision on the video record already created not later than 180 days from the date judgment is entered in this matter." Pursuant to the conditional writ, the common pleas court reviewed the video record, and Slagle was convicted. Slagle appealed.

{¶ 45} On review of his conviction, we disagreed with the federal district court's conclusion that Ohio law permitted Slagle to be convicted based on an audiovisual record. Rather, we concluded that "a successor judge in a bench trial, absent the consent of the parties, may not render a verdict in a bench trial based solely upon a review of an audiovisual recording of the trial." *Slagle* at ¶ 40.

{¶ 46} Nevertheless, we held that collateral estoppel precluded relitigation of the district court's order. We stated: "The State was surely bound by the federal court order in Slagle's habeas corpus proceeding; had the common pleas court failed to render a verdict in the manner prescribed by, or within the time limit prescribed by, the federal order, the State could not have continued to incarcerate Slagle in defiance of the federal court's order." *Slagle* at ¶ 42.

{¶ 47} *Slagle* focused on the remedy provided in the district court's conditional writ of habeas corpus, whereas this case concerns the district court's holding on the

underlying constitutional and factual questions. Despite these differences, *Slagle*'s general holding that the principles of collateral estoppel bar relitigation of issues decided in a district court's habeas ruling is applicable to both circumstances. Although the district court has lost its jurisdiction to enforce the prospective aspect of its December 15, 2011 decision due to our vacation of Gillipsie's conviction and sentence, the doctrines of collateral estoppel and federal supremacy continue to govern the State's ability to relitigate, in state court, the district court's factual findings and its holding on the *Brady* constitutional issue. Those matters have been decided and cannot be relitigated.

{¶ 48} The State claims that collateral estoppel should not apply to the district court's factual findings, because the issue of the existence of the alleged supplemental police reports was not before the district court, and the district court's factual findings were based on a mistaken impression that this appellate court had factually found that the reports existed. The State further asserts that, in 2008, it was not required to submit evidence opposing Gillispie's assertion that supplemental reports had been prepared. Gillispie responds that the State had ample opportunity to present evidence that the supplemental reports did not exist, and that it made a strategic decision not to present evidence on this issue.

{¶ 49} The district court's December 15, 2011 decision unequivocally found that the supplemental police reports existed. In summarizing the evidence before it, the district court stated that "Det. Bailey prepared supplemental reports describing the events involving Mr. Wolfe, their investigation of Mr. Gillispie, their elimination of Mr. Gillispie as a suspect, and their reasons therefor."

{¶ 50} The district court addressed Gillispie's *Brady* claim based on the

documentary evidence that was before the state court. As stated above, Gillispie's ground for habeas relief was that the State failed to produce supplemental police reports that had been prepared by Detectives Bailey and Fritz. Bailey and Fritz had provided affidavits attesting to the existence of those reports. The State's response to Gillispie's 2008 petition for post-conviction relief and motion for a new trial included numerous exhibits. Attached to the opposition memorandum itself was (1) a table comparing characteristics of the rapist, as reported, and Gillispie, (2) an affidavit from Detective Moore, which addressed, among other things, Moore's investigation into the Kentucky campground records, which was one aspect of Gillispie's *Brady* claim, (3) a cover letter from the Kentucky Department of Agriculture regarding the campground records, (4) three campground receipts, and (5) a copy of Gillispie's motion to produce *Brady* material. (State's Response, filed Apr. 25, 2008) The State also filed two appendices to its opposition memorandum with 27 documents. On July 3, 2008, the State moved to supplement its response with an additional affidavit from Wade Lawson, a former employee of the Dayton Police Department;[4] that motion was denied on July 9, 2008, in the same judgment that overruled Gillispie's motion for a new trial and for post-conviction relief.

{¶ 51} The record indicates that the State provided evidence opposing certain aspects of Gillispie's motion for a new trial and for post-conviction relief, particularly the investigation into the Kentucky campground, but not the existence or nonexistence of the supplemental police reports. Based on the record in this case, the district court and the

---

[4] In our July 24, 2009 opinion, we incorrectly stated that Gillispie had moved to supplement his motion with an affidavit by Lawson.

trial court concluded that the State could have contested, but elected not to contest, the existence of the supplemental police reports.

**{¶ 52}** In addition, we find nothing in the district court's December 15, 2011 decision to indicate that the district court's finding was based on a mistaken impression that the state courts had concluded that the supplemental reports exist. Although the district court thoroughly discussed our 2009 opinion (not to mention the entire procedural history of Gillispie's *Brady* claim) prior to conducting its habeas review of the *Brady* issue, the district court did not state that the state courts found that the supplemental reports existed. Rather, the district court prefaced its factual findings with the phrase, "the evidence in this case established." The district court's language indicates that it reviewed the evidence before the state courts and made findings of fact based on that record.

**{¶ 53}** Regardless, if the State wished to contest the legal or factual conclusions of the district court's decision granting a conditional writ of habeas corpus to Gillispie, the appropriate avenue to challenge the district court's ruling was an appeal to the Sixth Circuit. The State's voluntary dismissal of its appeal of the December 15, 2011 decision constituted a waiver of any challenge to the conclusions reached by the district court.

**{¶ 54}** Next, the State asserts that the district court's December 15, 2011 decision did not state that the State was required to provide the supplemental police reports in order to retry Gillispie. The State argues that the December 15, 2011 decision – and *Brady* – simply require the State provide the necessary *information*. Gillispie counters that all of the district court's rulings are entitled to collateral estoppel effect, and that both the original decision granting the conditional writ and the district court's subsequent

February 2013 decision make clear that the State could not retry Gillispie without producing the supplemental police reports.

{¶ 55} The December 15, 2011 decision could be read as having some ambiguity regarding whether disclosure of the reports, or simply the information in the reports, was required to be produced in order for the State to retry Gillispie. Gillispie asked the district court to find that the failure to disclose the supplemental reports written by the original investigating detectives violated *Brady*. *See Gillispie*, 835 F.Supp.2d at 494 (Petitioner's Ground for Relief 1). The district court concluded that the ground for relief was meritorious, but it specifically found that Gillispie was denied his right to due process, as interpreted in *Brady*, "to be apprised of all material exculpatory and impeachment *information* which the State holds." (Emphasis added.) *Id.* at 509.

{¶ 56} The district court's February 11, 2013 decision, however, clarified that the *retrospective* portion of its December 15, 2011 decision required the production of the supplemental reports themselves. The district court expressly stated that the evidence in question, i.e. the supplemental reports, was *Brady* material and that Gillispie could not be constitutionally convicted upon retrial without production of that material. Indeed, the district court made clear that it considered the *Brady* violation to be "incurable" in that the State could not retry Gillispie unless it produced the supplemental reports.

{¶ 57} This clarification was also binding on the state trial court. The Sixth Circuit has held that a district court cannot materially amend its judgment after the State has released a petitioner, and that a habeas court does not maintain "continuing supervision over a retrial conducted pursuant to a conditional writ granted by the habeas court." *Girts v. Yanai*, 600 F.3d 576, 582 (6th Cir.2010), quoting *Pitchess v. Davis*, 421 U.S. 482, 490,

95 S.Ct. 1748, 44 L.Ed.2d 317 (1975).  However, the Sixth Circuit has stated that a district court has jurisdiction to "clarify" the scope of the court's writ.  *See id.* (district court could clarify whether the unconditional writ permitted retrial), discussing *Satterlee v. Wolfenbarger*, 453 F.3d 362 (6th Cir. 2006).

{¶ 58} In *Girts*, the district court entered an unconditional writ of habeas corpus, which ordered the State to release the defendant.  After the State complied with the order (the defendant was released, thus the writ had become moot and the district court lost any prospective interest in its enforcement), the State requested a finding on whether it could retry the defendant.  The following day, the district court clarified its order granting the unconditional writ of habeas corpus, concluding that retrial was permitted.  The Sixth Circuit held that the district court had jurisdiction to clarify what was meant by its unconditional writ.  *Girts* at 581-582.  The court emphasized that "a district court sitting in habeas has jurisdiction to consider the circumstances that exist up until either the state complies with a conditional writ or the court issues an unconditional writ, but does not have jurisdiction to consider circumstances that unfold after the state complies with the writ."  *Id.* at 582.

{¶ 59} Here, as with the clarification decision in *Girts*, the district court's February 11, 2013 decision was rendered after the defendant was no longer confined by the State due to an unconstitutional judgment.  Nevertheless, the district court's February 11, 2013 decision related to whether the State could retry Gillispie without production of the supplemental police reports, a matter that the December 15, 2011 decision arguably left as ambiguous.  As in *Girts*, the district court made this clarification in response to arguments by the State relating to the scope of the conditional writ.

{¶ 60} In our view, the district court was permitted to clarify its December 15, 2011 decision to indicate whether production of supplemental police reports themselves or simply the information contained within them was required. We emphasize the district court's clarification related to circumstances that existed up until the state complied with the conditional writ, and not with circumstances that unfolded after Gillispie's conviction and sentence were vacated. The district court clarified, as opposed to modified, the retrospective portion of its December 15, 2011 decision as it related to whether production of the reports was required.

{¶ 61} In short, we reject the State's suggestion that our 2009 decision is now the controlling law of the case regarding the alleged *Brady* violations. The trial court correctly concluded that it was required to follow the federal district court's December 15, 2011 habeas decision (as clarified by its February 11, 2013 decision), which concluded that the State's failure to produce the supplemental police reports violated *Brady* and rendered Gillispie's confinement unconstitutional. The State cannot relitigate the district court's legal conclusions or factual findings. The trial court correctly interpreted the district court's December 15, 2011 decision as requiring the State to produce the actual supplemental police reports, and not just the information contained within them.

### IV. Dismissal of the Indictment

{¶ 62} Finally, the State asserts that dismissal of the indictment was not the appropriate remedy for the *Brady* violation, because it was not demonstrated that Gillispie could not still receive a fair trial absent production of the supplemental police reports. The State contends, citing *State v. Keenan*, 143 Ohio St.3d 397, 2015-Ohio-2484, 38 N.E.3d 870, that the parties should have been given the opportunity to develop the record

before dismissal of the indictment.

**{¶ 63}** We review the trial court's dismissal of the indictment for an abuse of discretion. *Keenan* at ¶ 7. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary. An abuse of discretion includes a situation in which a trial court did not engage in a 'sound reasoning process.' Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

**{¶ 64}** The Ohio Supreme Court has held that "[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), paragraph two of the syllabus. This holding applies equally to discovery violations committed by the State and by the defense. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 42.

**{¶ 65}** In *Keenan*, the defendant was found guilty of murder in 1989 and sentenced to death. The Ohio Supreme Court reversed the conviction based on prosecutorial misconduct at trial, *State v. Keenan*, 66 Ohio St.3d 402, 613 N.E.2d 203 (1993), and Keenan was again convicted and sentenced to death upon retrial. In 2012, after a "long and complex history," the federal district court granted Keenan a writ of habeas corpus due to *Brady* violations. The district court ordered the State to set aside Keenan's conviction or conduct another trial within 180 days.

**{¶ 66}** Keenan subsequently filed a motion to dismiss in the trial court, which the

trial court granted, stating, "In light of the State's egregious prosecutorial misconduct and the *Brady* violations in Keenan's prior two trials, Keenan cannot receive the fair and Constitutional trial that he is entitled to today." The court indicated that the case was "unique and extraordinary * * * where the prejudice created cannot be cured by a new trial." The Eighth District affirmed the dismissal of the indictment.

{¶ 67} The Supreme Court of Ohio reversed. In doing so, the supreme court emphasized that "[t]he issue in this case is not whether Keenan's rights have been violated—they have been, and that is why the district court granted the writ of habeas corpus. The issue is whether, given those violations, it is possible for Keenan to receive a fair trial. Obviously, this is a highly subjective determination, requiring the analysis of a voluminous record with appropriate adjustments for the absence of certain key witnesses who are now unavailable because they have died." *Keenan*, 143 Ohio St.3d 397, 2015-Ohio-2484, 38 N.E.3d 870, at ¶ 8. The Court found that the dismissal of the indictment was premature, reasoning that the parties should have been given the opportunity to develop the record on whether Keenan could receive a fair trial.

{¶ 68} The Court's opinion addressed an argument by Keenan at oral argument that the absence of a witness would be detrimental to his efforts to defend himself, stating:

> That something is hard to do does not mean that it is unconstitutional. We understand that Keenan will have difficulties based on the passage of time, deceased witnesses, decreased memories, and so forth. But so will the state; for example, the late Mr. Espinoza [the focus of Keenan's argument] was the state's sole source of direct eyewitness testimony about Klann's murder. In the event that these difficulties render it impossible for

Keenan to defend himself, the trial court can at that time determine that a fair trial is not possible. But that day, if it comes, is in the future -- at a minimum, after it is determined whether the state is able to establish its case in chief.

In so holding, we reject the state's argument that because the *Brady* violations led to the granting of the writ of habeas corpus, they cannot also serve as the basis of a dismissal with prejudice. It is possible for a *Brady* violation (or other type of discovery abuse) to be so severe, so detrimental to the interests of justice that it can be the basis for the granting of a great writ and for the subsequent granting of a motion for dismissal.

*Id.* at ¶ 11-12.

**{¶ 69}** We do not find *Keenan* to be controlling in the case before us. *Keenan* includes only an abbreviated factual and procedural history, which limits its usefulness in determining whether the trial court, in this case, abused its discretion in dismissing the indictment. Although, as here, the basis for the district court's granting Keenan a conditional writ of habeas corpus was a *Brady* violation, *Keenan* contains no discussion of the nature of the *Brady* violation and whether the violation had been rectified in some way prior to retrial. The State's argument before the Ohio Supreme Court seemed to suggest that the trial court's dismissal of the indictment was due to the State's past failure to provide the *Brady* material, not on a present inability or failure to provide it. And, the Supreme Court's opinion appears to focus on whether Keenan could receive a fair trial despite challenges mainly caused by the significant passage of time since the offense, holding that the parties must be given the opportunity to further develop the record before

dismissing the indictment on that basis, not on a present failure to comply with *Brady*.

{¶ 70} *Keenan* stands for the proposition that a trial court errs in finding that a defendant cannot receive a fair trial without providing the parties an opportunity to develop the record on that issue. Here, the district court determined that the State violated Gillipsie's right to due process and denied Gillispie a fair trial when it failed to produce the supplemental police reports. The district court's decision granting the conditional writ, as later clarified, expressly found that the reports existed and held that the State's failure to provide those supplemental police reports would necessarily preclude a fair trial upon retrial. The trial court provided the parties ample opportunity to present arguments concerning the preclusive effect of the district court's judgment, particularly in light of the State's statement that it could not produce the supplemental police reports. To the extent that *Keenan* applies, the trial court complied with *Keenan*'s requirement that the parties be given an opportunity to develop a record on whether Gillispie could obtain a fair trial upon retrial; for purposes of this case, that issue depended substantially on whether the district court's December 15, 2011 decision, in whole or in part, was required to be followed.

{¶ 71} We also note that, to the extent that *Keenan* discussed the impact of the *Brady* violation, it commented that a *Brady* violation could form the basis for granting a motion for dismissal. In this respect, *Keenan* is favorable to Gillispie, not the State.

{¶ 72} We are mindful that "once the petitioner's criminal judgment was vacated, '[t]he responsibility of ensuring that he received not only a fair trial, but a timely one, then passed to the [state trial court] in the first instance.' " *Gillispie*, 771 F.3d at 329, quoting *Eddleman*, 586 F.3d at 413. However, as discussed above, the state courts remain

bound by the district court's conclusion, on habeas review, that Gillispie could not receive a fair trial without production of the supplemental police reports. In light of the district court's conclusion and because the State has conceded that it cannot produce the supplemental police reports, as required by the district court, the trial court did not abuse its discretion in dismissing the State's indictment against Gillispie.

## V. Conclusion

{¶ 73} To summarize, the trial court correctly determined that it was required to follow the federal district court's determination, upon habeas review, that a *Brady* violation had occurred due to the State's failure to produce supplemental police reports to Gillispie. It is not legally relevant whether we now agree or disagree with the district court's holding that our 2009 opinion invoked an "unreasonable determination of the facts in light of the evidence presented" and an "objectively unreasonable application of *Brady* and its progeny." The State cannot relitigate whether the supplemental police reports existed and whether the State's failure to produce the supplemental reports constituted a *Brady* violation.

{¶ 74} Moreover, the district court clarified the retrospective portion of its decision granting the conditional writ, stating that Gillispie could not be constitutionally convicted of the offenses without production of the supplemental police reports themselves; the district court had authority to clarify its prior ruling in this respect, despite the fact that Gillispie's conviction and sentence had been vacated. The trial court properly afforded the clarification preclusive effect. In light of the State's statement that it cannot produce the supplemental police reports, as required by the district court, the trial court did not abuse its discretion in dismissing the indictment against Gillispie.

{¶ 75} The State's assignment of error is overruled.   The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

FAIN, J., concurs.

HALL, J., concurs in judgment.


Copies mailed to:

Andrew T. French
Mark Godsey
Jim Petro
Pierre H. Bergeron
Colter L. Paulson
Larisa M. Vaysman
Hon. Steven K. Dankof